IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF APPLE IPHONE XR, IMEI 356423109987242, ASSOCIATED TELEPHONE NUMBER 423-708-1047, CURRENTLY LOCATED AT THE CHATTANOOGA POLICE DEPARTMENT | Case No. 1:20-mj- 24 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Jeffrey Nix, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.  I am a Special Agent of the Federal Bureau of Investigation with the United States Department of Justice, and has been so employed since June, 2010. I am a is a graduate of the FBI Academy, Quantico, Virginia. I am currently assigned to the Safe Streets Task Force with the FBI Knoxville Division, Chattanooga Resident Agency. I have had specialized training and has been involved in numerous investigations involving violent crimes and criminal activities with respect to federal violations.

3.  This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

Page 1 of 11

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is an Apple iPhone XR, IMEI 356423109987242, associated telephone number 423-708-1047, hereinafter the "Device." The Device is currently located at the Chattanooga Police Department.

5. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6. On November 15, 2019, at approximately 1807 hours, a subject robbed American Trust Cash Advance, located at 5910 Reagan Lane Suite 103, Ooltewah, Tennessee. The manager on duty greeted the suspect and the suspect immediately said, "give me the fucking money." The manager, not thinking the male was serious, did not react to his demand. At that time, the suspect pulled a knife from below his waistband, grabbed the manager by the back of the shirt and forced her and a coworker to the back office at knife-point. The suspect then went to the front of the store leaving the two victims. The suspect returned and said, "where is the fucking money?" An employee told him it was in the safe. The suspect grabbed the employee and brought him to the safe. The suspect got in the safe and took money that was in bags. The suspect brought the employee back to the back office and closed the door. The manager and employee did not leave the office until they heard the front door close. The suspect was described as a black male, approximately 5'10", mid 20's, wearing a du rag, dark gray sweatshirt, sweat pants and a bandanna covering his mouth and possessing a knife.

7. On December 28, 2019, at approximately 0837 hours, the American Trust Cash Advance located at 5910 Regan Lane, Suite 103, Ooltewah, Tennessee 37363 was robbed again.

Employees/victims described the suspect as a black male with a mask wearing dark clothes and armed with a knife. A witness observed a dark colored Chevrolet vehicle, possibly a Malibu.

8. On December 28, 2019, at approximately 0855 hours, Quick Credit, located at 1408 Gunbarrel Road was robbed. The Quick Credit store manager advised that an unknown male came into the store and walked directly to her. The suspect demanded all the money from the business. The manager observed the unknown male trying to pull something out of his pocket. While making the demands, the suspect brandished a knife. The manager then took all of the money out of the filing cabinet, which was at approximately $150.00. The suspect took the money, told the employees not to move, then the suspect left in a vehicle. The suspect was described as a black male, approximately 5'7 - 5'9", between the ages of late 20's to early 30's, wearing glasses, a black coat and black pants, a toboggan on his head, and a mask, which covered the lower part of his face. The manager advised prior to coming into work on the morning of December 28, 2019, she observed a blueish green Chevrolet four-door sedan in the parking lot. The manager said the vehicle drove around the building and parked in a parking space in front.

9. On December 28, 2019, at approximately 0939 hours, Cash Express located at 4830 Highway 58, Chattanooga, Tennessee, was robbed by a black male with a knife. The store clerk advised that an unknown black male had entered the store. The suspect covered the bottom half of his face and brandished a knife. The suspect demanded all of the money. The clerk handed the suspect approximately $2,300.00 in US Currency from the register drawer. The suspect was described as being a tall, black male wearing a black toboggan, black jacket and black jeans. The suspect was last seen driving a newer dark colored Chevrolet sedan, possibly a Malibu.

10. On December 28, 2019, at approximately 1247 hours, a suspicious person was reported at Great American Loans located at 5309 Ringgold Road, East Ridge, Tennessee 37412.

Page 3 of 11

A store employee advised that she received a call from another store manager making her aware of the robberies that occurred in other parts of the county. She stated a black male pulled into the parking lot in a bluish Chevrolet Malibu. The employee stated the suspect was a tall and thin and was wearing blue jeans and red do-rag. She stated the front door was locked so she talked to the man using the intercom. She said the man said he was interested in getting a loan, so she advised him of the steps to get a loan. The man stated he did not have a checking account, and she said he would need to have one to get a loan. The employee said the man then got back into his vehicle and left heading west on Ringgold Road.

11. On January 3, 2019, at approximately 1000 hours, Cash Now, located at 6025 East Brainerd Road, Chattanooga, Tennessee 37421, was robbed by a black male with a knife. A store employee advised that a thin black male wearing dark pants, a dark jacket and a mask entered the store. The subject displayed a knife and demanded money from the clerk. The subject obtained money from the register then exited the store. The subject entered the driver's seat of a blue Chevrolet Malibu and traveled east on East Brainerd Road.

12. On January 3, 2020, at approximately 1200 hours, Cash Express located at 7341 East Brainerd Road, Chattanooga, Tennessee 37421, was robbed by a black male with a knife. A review of the store surveillance video depicts a black male wearing glasses, a dark colored pants, a dark colored jacket and a dark colored mask. The subject in the video displays a knife to the store employee and demanded money. The employee provided money from the register to the subject. The subject then exited the store. The store employee advised that a blue Chevrolet Malibu pulled into a parking lot located behind Cash Express approximately 20 minutes prior to the robbery. The employee advised that the subject left exited the building in the same direction as she where she previously observed the blue Chevrolet Malibu. Video Surveillance was able to obtain a partial

tag from the vehicle. A search of the digits known from that Blue Chevy Malibu tag returned to DeJuan Scott, the subject of this investigation.

13. On January 7, 2020 at approximately 1713 hours a black male in the same blue 2014 Malibu attempted to enter the Cash Express at 7431 East Brainerd Road, Chattanooga, Tennessee. The employees were alerted to his presence prior to his attempt to enter the business and locked the door. The black male suspect was wearing a face mask, reaching for a knife contained in a holster on his side, however was unable to enter due to the locked door. The suspect fled in a 2014 blue Chevrolet Malibu displaying Tennessee license plate 7M6-1G7. The subject vehicle was located by Chattanooga Police a few blocks away from the business location. The vehicle was operated by DeJuan Scott, who was in possession of a knife matching the knife used on surveillance video in multiple robberies above. Scott was also in possession of an Apple iPhone XR, IMEI 356423109987242, associated telephone number 423-708-1047.

14. Agents learned that vehicle was purchased from Car-Mart. Scott provided telephone number 423-708-1047 to Car-Mart located at 4517 Hixson Pike, Hixson, Tennessee 37343, concerning the purchase of a 2014 blue Chevrolet Malibu, VIN 1G11C5SL3EF136751. Records checks indicate that the 2014 blue Chevrolet Malibu bearing VIN 1G11C5SL3EF136751 is registered to Dejuan Scott and displays Tennessee license plate 7M6-1G7.

15. The Device is currently in the lawful possession of the Chattanooga Police Department. It came into the Chattanooga Police Department's possession in the following way: seized incident to arrest. Therefore, while the Chattanooga Police Department might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

16. The Device is currently in storage at the Chattanooga Police Department. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the Chattanooga Police Department.

## **TECHNICAL TERMS**

17. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed

Page 6 of 11

Case 1:20-mj-00024-CHS    Document 2    Filed 03/03/20    Page 6 of 14    PageID #: 10

and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

        c.      Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

        d.      GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive

Page 7 of 11

Case 1:20-mj-00024-CHS   Document 2   Filed 03/03/20   Page 7 of 14   PageID #: 11

those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

18. Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at htttps://www.apple.com/iphone-xr/specs/ I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, how the device was used. I submit

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but

Page **10** of **11**

not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

23. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

_____
Jeffrey Nix
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on this ___3rd___ day of March, 2020.

_____
HONORABLE CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF APPLE IPHONE XR, IMEI 356423109987242, ASSOCIATED TELEPHONE NUMBER 423-708-1047, CURRENTLY LOCATED AT THE CHATTANOOGA POLICE DEPARTMENT | Case No. 1:20-mj- 2⁴ |

## ATTACHMENT A

The property to be searched is an Apple iPhone XR, IMEI 356423109987242, associated telephone number 423-708-1047, hereinafter the "Device." The Device is currently located at the Chattanooga Police Department

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF APPLE IPHONE XR, IMEI 356423109987242, ASSOCIATED TELEPHONE NUMBER 423-708-1047, CURRENTLY LOCATED AT THE CHATTANOOGA POLICE DEPARTMENT | Case No. 1:20-mj- 24 |

## ATTACHMENT B

1. All records on the Device described in Attachment A that relate to violations of Title 18, United States Code 1951 and involve Dejuan Scott since November of 2019, including:

    a. any information recording Dejuan Scott's schedule or travel from November of 2019 to the present;

    b. all bank records, checks, credit card bills, account information, and other financial records.

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

Page 1 of 2

Case 1:20-mj-00024-CHS   Document 2   Filed 03/03/20   Page 13 of 14   PageID #: 17

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.